## STRUTHERS *v.* DREXEL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF PENNSYLVANIA.

Argued May 2, 1887. — Decided May 27, 1887.

If a record in error contains the charge in full, with a memorandum at the
close that certain portions are excepted to, but they are not verified or
included in a proper bill of exception, it is not part of tl . record for
any purpose.

S. contracted with D. in writing, in which, after reciting that D. had
purchased 400 shares of a certain stock at $50 per share, S., in consid-
eration of one dollar, agreed at the end of one year from date if D.
desired to sell the shares at the price paid, to purchase them of him
and pay that amount with interest. When the time expired, D. elected
to sell, and tendered the stock; and, S. refusing to take it and pay for
it, D. sued him for the contract price, declaring on a contract whereby
the plaintiff sold and agreed to deliver to defendant 400 shares of the
stock at $50 per share, to be paid by defendant on delivery, in considera-
tion whereof the defendant undertook and promised to accept the stock
and pay for the same on delivery. *Held,* That this declaration set forth
properly the legal effect of the contract, and the omission of the state-
ment of the nominal consideration was immaterial, and need not be
proved.

The letter of the defendant in error of March 20, 1876, was admissible in
evidence.

When a declaration in assumpsit contains a special count, under which on
the proofs the plaintiff can recover, and also general counts, an instruc-
tion to the jury that the plaintiff can recover under the general counts,
if it be erroneous, works no injury to the defendant.

The transaction between the parties, so far as disclosed by the record, was
not a loan of money, and consequently no question of usury could arise.

ASSUMPSIT. Verdict and judgment for plaintiff. Defendant
sued out this writ of error. The case is stated in the opinion
of the court.

*Mr. George Shiras, Jr.,* and *Mr. Rasselas Brown,* for plain-
tiff in error. *Mr. W. M. Lindsay* was with them on the brief.

*Mr. John Dalzell* for defendant in error.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an action of assumpsit brought by the defendant in error against the plaintiff in error and Thomas S. Blair, the latter not having been served with process. The declaration contained two special counts, as follows:

"For that whereas heretofore, to wit, on the 4th day of April, A.D. 1873, at New York, to wit, in the Western District of Pennsylvania aforesaid, in consideration that the said plaintiff, at the special instance and request of the said defendants, would take and pay for, at the rate of $50.00 per share, four hundred (400) shares of the capital stock of the Blair Iron and Steel Company, a corporation organized under the laws of Pennsylvania, they, the said defendants, undertook, and then and there faithfully promised the said plaintiff, that if at the end of one year from said date he, the said plaintiff, should desire to sell the said shares at the said price by him paid for the same, they, the said defendants, would · purchase the said shares of the said stock, to wit, four hundred shares of the said Blair Iron and Steel Company, at the said price, to wit, fifty dollars per share, and pay him, the said plaintiff, therefor at the said rate, together with interest at the rate of seven per centum per annum.

"And the said plaintiff avers that he, confiding in the said promises and undertaking of the said defendants, did afterwards, to wit, on the day and year aforesaid, to wit, at the district aforesaid, take and pay for four hundred (400) shares of said stock aforesaid, at the rate of $50.00 per share, amounting in all to a large sum, to wit, the sum of twenty thousand dollars ($20,000).

"And the said plaintiff further avers, that at divers times subsequently, to wit, on the 4th day of April, A.D. 1874, and, to wit, on the 4th day of April, A.D. 1875, in consideration that the said plaintiff, at the special instance and request of the said defendants, would waive his right of election to sell to the said defendants the said shares of the capital stock of the said Blair Iron and Steel Company, to wit, four hundred (400) shares thereof, they, the said defendants, undertook, and

then and there promised faithfully the said plaintiff, that, if at the end of one year from the said last-mentioned dates, respectively, to wit, April 4, A.D. 1874, in the first instance, and April 4, A.D. 1875, lastly, he, the said plaintiff, should desire to sell the said hereinbefore-mentioned shares at the said price by him paid for the same, they, the said defendants, would purchase the said shares of the said stock at the said price paid by him, the said plaintiff, paid therefor, to wit, fifty dollars per share, and pay him, the said plaintiff, therefor at the said rate, together with interest at the rate of seven per cent per annum.

"Yet the said defendants, not regarding their said promises and undertakings, although often requested so to do, and although the said stock was by the said plaintiff tendered to the said defendants, to wit, on the day and year aforesaid, to wit, at the district aforesaid, have not as yet paid to the said plaintiff the said sum of twenty thousand dollars ($20,000.00), but have hitherto wholly neglected and refused, and do still refuse and neglect, to wit, at the Western District of Pennsylvania, to the damage of the plaintiff thirty thousand dollars.

"And the said plaintiff further complains of the said defendants for that whereas heretofore, to wit, on the 4th day of April, A.D. 1876, to wit, at the Western District of Pennsylvania, the said defendants bargained for and bought of the said plaintiff, at the special instance and request of the said defendants, and the said plaintiff then and there sold to the said defendants, a large quantity of goods, to wit, four hundred (400) shares of the capital stock of the Blair Iron and Steel Company, at the rate or price of $50.00 per share, with seven per cent interest added from April 4, A.D. 1873, to be delivered by the said plaintiff to the said defendants, and to be paid for by the said defendants to the said plaintiff on the delivery thereof as aforesaid, and in consideration thereof, and that the plaintiff, at the like special instance and request of the said defendants, had then and there undertaken and faithfully promised the said defendants to deliver the said stock to the said defendants in the time and at the place aforesaid, they, the said defendants, undertook, and then and there faithfully

promised the said plaintiff, to accept the said stock of and from him, the said plaintiff, and to pay for the same on the delivery to them, the said defendants, as aforesaid.

"And though the said plaintiff afterwards, to wit, on the day and year aforesaid, to wit, at the Western District of Pennsylvania aforesaid, was ready and willing and then and there tendered and offered to deliver the said stock to the said defendants, and then and there requested the said defendants to accept the same and to pay him therefor as aforesaid, yet the said defendants, not regarding their said promises and undertakings, but contriving and craftily and subtly intending to deceive and to defraud the said plaintiff in this behalf, did not nor would at the time when they were so requested as aforesaid, or at any time before or afterwards, accept the said stock or any part thereof of or from the said plaintiff or pay him for the same as aforesaid, but then and there wholly neglected and refused so to do, to the damage of the plaintiff thirty thousand dollars."

It also contained common counts, for goods bargained and sold, money had and received, and money laid out and expended for the use of the defendants.

To this declaration the plaintiff in error pleaded, as to all the counts: 1st. That the consideration mentioned in the alleged agreements, referred to in the declaration, bearing date April 4, 1873, April 4, 1874, and March 22, 1875, was never paid, nor was any valid consideration paid or given, or agreed to be paid or given therefor. 2d. That the alleged agreements were usurious under the laws of New York, where they were made, being a mere device or contrivance for obtaining to the plaintiff more than the legal rate of interest for money advanced by way of loan to the Blair Iron and Steel Company. 3d. That the plaintiff did not tender the 400 shares of stock referred to in the plaintiff's declaration, as therein alleged. 4th. That the alleged agreements were void as against public policy, being in fraud of the other subscribers to the stock of the Blair Iron and Steel Company, as they secured to the plaintiff an advantage over other subscribers by a secret agreement. 5th. That the agreement set

out in the declaration was without consideration. 6th. The statute of limitations of six years.

The cause was tried by a jury, and a verdict and judgment rendered in favor of the plaintiff for the sum of $34,651.36, to reverse which this writ of error is prosecuted.

The transcript of the record contains what purports to be the charge of the court in full, with a memorandum at the close, stating that defendants' counsel excepted to certain portions thereof; but, as it is not verified, or included in any proper bill of exceptions, we are not at liberty to treat it as a part of the record for any purpose. Several bills of exception were taken, during the progress of the trial, to rulings of the court, on which assignments of error are alleged, and which we will consider in their order.

1st. From the first bill of exceptions it appears, that upon the trial the plaintiff offered in evidence two papers, one dated April 4, 1873, and the other March 22, 1875, as follows:

"NEW YORK, April 4, 1873.

"Whereas Joseph W. Drexel has purchased four hundred shares of the stock of the Blair Iron and Steel Company, sold by A. S. Diven, trustee of said company, at the price of fifty dollars per share:

"Now, we, the undersigned, in consideration to us of one dollar, in hand paid, the receipt whereof is hereby acknowledged, do hereby agree that if, at the end of one year from this date, the said Drexel shall desire to sell the said shares at the price paid for the same by him, we will purchase the same at that price, and pay to him the amount paid by him on the same, with interest at the rate of seven per cent per annum.

"April 4, 1873.

"THOS. S. BLAIR.
"THOMAS STRUTHERS."

"NEW YORK, March 22, 1875.

"In consideration of the waiver by Joseph W. Drexel of the right of election to sell to us the four hundred shares of

stock in the Blair Iron and Steel Company (subscribed and paid for by him), as he was entitled to do by agreement with us in 1873, renewed and extended by agreement of 1874 to April 4, 1875, we do hereby agree that his right to do so shall be extended for another year, viz., to April 4, 1876. If he shall at that time elect to sell to us the four hundred shares so subscribed and held by him, we will receive and pay for the same the amount paid by him therefor, with interest at the rate of seven per cent per annum from the dates of the payment by him of the respective instalments thereon, and as collateral security for the performance by us of this our agreement we have placed in the hands of Joseph W. Drexel four hundred shares of the stock of the said Blair Iron and Steel Company to be held by him in trust for that purpose.

> "Thos. S. Blair.
>
> "Thomas Struthers."

To the reception in evidence of these papers the defendants' counsel objected, stating that he did not deny their execution, but that they were not admissible in evidence, because the plaintiff had averred in the declaration that the consideration of the contract was the subscription to 400 shares of stock in the Blair Iron and Steel Company, whereas in these papers the consideration set forth is the payment of one dollar. The objection was overruled, and an exception taken. This ruling is now alleged as error. In ruling on the papers, the court said the contracts were admitted subject to consideration thereafter, in view of further evidence which might be adduced. The bill of exceptions does not set out what, if any, further evidence was adduced. We are of opinion that the testimony was properly admitted. Even if there was a variance between the contract as shown by these papers and that alleged in the first count of the declaration, certainly there was none between the allegations of the second count and the written instrument as offered, according to its legal effect.

The second count of the declaration sets forth a contract whereby the plaintiff sold and agreed to deliver to the defendants 400 shares of the capital stock of the Blair Iron and Steel

Company, at the price specified, to be paid by the defendants on delivery, in consideration whereof the defendants undertook and promised to accept the said stock and pay for the same on delivery in accordance therewith. This is precisely the legal effect of the contract set out in the instrument dated April 4, 1873. The recital in that instrument, that the plaintiff had purchased the same from the trustee of the Blair Iron and Steel Company, is mere matter of inducement and immaterial. The statement of the consideration of one dollar paid is also entirely immaterial, and may be treated as merely nominal. The real agreement embodied in the instrument is, according to its legal effect, that at the end of one year from that date the defendants would buy and pay for the number of shares of stock mentioned at the price specified, on delivery thereof at that time by the plaintiff. When thereafter, at the time specified, as it was subsequently extended, the plaintiff exercised his option by a tender of the stock, the contract became unconditional and absolute, and from that time the plaintiff was entitled to treat it as a contract in ordinary form for the sale and delivery of the subject of the agreement. The second count of the declaration sets it out in that form, and according to its legal effect, which is all that is required by the strictest rules of pleading.

2d. The second bill of exceptions shows that the plaintiff offered in evidence the following paper :

"NEW YORK, March 20, 1876.

"Gentlemen: I hereby notify you that I desire to sell the four hundred shares of the stock of the Blair Iron and Steel Company, held by me under the option of sale, according to the terms of the agreement between you and J. P. Morgan and J. W. Drexel, of April 4, 1873, and the several renewals thereof.

"You are hereby notified that I am ready to transfer the stock to you, or to any person or persons whom you may designate, upon the payment of the purchase money thereof and seven per cent interest thereon from date of payment.

"I hereby tender you the certificate of stock, and I demand

fulfilment of your contract on the premises. I am ready and willing at any time to transfer the stock upon the book of the company and fully perform the condition of rescission of purchase.

"Respectfully,                                J. W. DREXEL.
"To Mess. Thos. S. Blair and T. Struthers."

The admission of this paper in evidence, which was objected to, is assigned for error. There is no ground for this exception. The paper was certainly competent as constituting one item in the proof that the plaintiff exercised the option to sell the stock in accordance with the agreement, and tendered it for delivery.

3d. The third bill of exceptions states that in the further progress of the trial the defendants' counsel offered to prove by two witnesses that the consideration, one dollar, named in the said agreement was not paid by the plaintiff, or by anybody on his behalf, to the defendants. This offer was rejected on objection made, and an exception taken. We have already said that the mention of this nominal consideration was entirely immaterial, and might properly be omitted from any statement of the contract in a pleading which set out its legal effect. It was, of course, therefore, not necessary to prove it, and immaterial if disproven. The real consideration for the defendants' agreement to buy was the plaintiff's agreement to sell, determined by the exercise of his option and the tender for delivery of the stock for that purpose.

4th. The fourth bill of exceptions is based on an alleged error occurring in the following portion of the charge to the jury:

"Supposing that he (Wallace) did comply with his instructions (in making the demand), then did it become the duty of Mr. Struthers to pay the amount represented by that stock? If it did become his duty to pay that money, then we instruct you that the declaration in this case (what we call the common money counts) is sufficient to enable him to recover. Where parties have made a contract by which certain things to be done on one side and certain things on the other, if one

party does all those things that are required to be done by him to entitle him to a sum of money from the other party, he may recover that sum of money under the common money counts. We instruct you, therefore, that so far as the pleadings are concerned, there is no difficulty in the plaintiff recovering, under the declaration, a verdict for the amount that is due him."

The point of the objection is, that the jury was instructed that a recovery in favor of the plaintiff might be had under the common money counts of the declaration, and this is alleged for error. If so, however, it did not prejudice the defendants; for, as we have already seen, a recovery might be had upon the contract, considered as an executory contract for the purchase by the defendants of the stock in question, under the second special count. In addition to that, so far as the bill of exceptions shows, it might well be that there was proof in the case, not only of a tender of the stock, but of an actual delivery and acceptance. In that case, the contract would have been completely executed on the part of the plaintiff, title to the stock passing by the delivery to the defendants. In such a case, the charge would be entirely correct, and a recovery might be had under the common counts.

5th. The fifth bill of exceptions is based upon an alleged error in the following portion of the charge:

"On the face of the papers the question is whether there was any loan at all. There is no usury unless there is a loan of money, and the question is whether the transaction involved a loan or attempted loan of money. We have looked at these papers carefully, and we instruct you that there is no evidence on their face that there was any intention to loan between the plaintiff and the defendant whereby usury could arise.

"It is our duty to give you instructions on that subject, and we say to you that upon that point the defence of the defendant must fail."

This charge is correct. There is nothing upon the face of the papers to show that the transaction was a loan of money by the plaintiff to the defendants, or to the Blair Iron and

Steel Company. Unless there was a loan there can be no usury. The bill of exceptions sets out no evidence to show the transaction to have been different from what it appears to be on the face of the papers.

This covers all the points raised upon the record. We find no error in the proceedings of the Circuit Court, and its judgment is accordingly

*Affirmed.*